IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CR 107-071 |
| | ) | |
| SHAWNTRAIL J. LEE | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the above-captioned criminal case, Defendant Shawntrail J. Lee ("Lee") is charged with one count of Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). The matter is now before the Court on Lee's motion to suppress, in which he requests suppression of evidence seized during the search of a car in which he was a passenger on June 24, 2007, as well as suppression of statements that he made to law enforcement officials. (Doc. no. 17). The Court held an evidentiary hearing on Lee's motion and heard testimony from Columbia County Sheriff's Deputy David Wheeler, as well as argument from Assistant United States Attorney Nancy Greenwood and Lee's defense counsel, Michael Millians.[1] Now, for the reasons developed more fully herein, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED**.

---

[1] Co-Defendant Rashon Dearal Jackson ("Jackson") also filed a motion to suppress and a supplement to that motion. (Doc. nos. 19, 30). However, on September 6, 2007, Jackson entered a guilty plea before the Honorable Dudley H. Bowen, Jr., United States District Judge. (Doc. nos. 33, 34). Accordingly, Jackson abandoned his request for suppression.

## I. FACTS

On June 24, 2007, the Lincoln County Public Safety Department received a 9-1-1 call from a person reporting shots fired from a white Lexus, with chrome rims and a New Jersey license plate, in the Piney Woods area of Lincoln County. (Doc. no. 26, Exs. A & B). According to the information provided from the Lincoln County Dispatch to the Columbia County Dispatch, Columbia County officers were requested to be on the look-out for this white Lexus, with two black males, which was reported to be heading from Lincoln County toward Columbia County and was thought to have drugs and/or weapons in it. (Id., Exs. B & C). Deputy David Wheeler with the Crime Suppression Unit, Special Operations Division, of the Columbia County Sheriff's Office[2] heard this information sent out from the Columbia County Dispatch at approximately 12:50 a.m. and headed toward the TPS convenience store/gas station ("TPS") at the intersection of Washington Road and William Few Parkway; the TPS is the first Columbia-County based gas station that would be passed when traveling on Washington Road from Lincoln County to Columbia County.[3]

Shortly after Deputy Wheeler arrived (approximately two to three minutes), a white Lexus pulled into the TPS, and Deputy Wheeler called for backup. The driver, Jackson, got out to pump gas, while Lee, the front seat passenger, and the third person in the car, a "small" woman riding in the back seat, went in to the convenience store. Deputy Wheeler testified

---

[2]Deputy Wheeler testified that he has been with the Columbia County Sheriff's Office for four years and with the Crime Suppression Unit for three years.

[3]Deputy Wheeler testified that the call went out that the Lexus was traveling on "47," which is Washington Road. See also, doc. no. 26, Ex. C (exchanging information that suspects were coming in on "47")

that there was nothing about the outward appearance of the Lexus or the three passengers that aroused his suspicion; rather, his actions were based on the suspicion arising from the information provided by his dispatcher.

When Lee and the female passenger exited the convenience store part of the TPS, Deputy Wheeler and other deputies approached, separated the three, and began to ask questions as to what happened earlier in the evening in Lincoln County, but little information was forthcoming.[4] Deputy Wheeler asked if there were any weapons or drugs in the car, and both Lee and Jackson said, "No." Deputy Wheeler testified that no one was under arrest at this point, but law enforcement officers were running a check on the license that had been obtained from the driver, Jackson.

While the license check was proceeding, law enforcement officers asked Jackson and Lee for permission to search the car. Although the Lexus belonged to Jackson, both Jackson and Lee refused permission to search. When the information came back approximately fifteen minutes later that Jackson's license was suspended, Jackson was arrested and placed in the back of a patrol car.[5] Deputy Wheeler testified that it is standard procedure to make an arrest and take a person to jail on the misdemeanor charge of driving on a suspended license.[6]

---

[4]As noted above, Jackson had remained with the Lexus to pump gas.

[5]Deputy Wheeler testified that the license check took a bit longer than the usual time of approximately five minutes because the check involved an out-of-state license.

[6]Jackson was issued a ticket for driving on a suspended license.

3

At that point, law enforcement officers searched the interior of the Lexus incident to Jackson's arrest; Deputy Wheeler specifically testified that there had been no search of the interior of the car prior to Jackson's arrest.[7] The officers found no contraband during this first search. Because Jackson was under arrest and Lee and the female passenger had been drinking, there was no one available at the TPS to assume custody of the Lexus. Thus, the officers called for a tow truck. Deputy Wheeler testified that it is department policy that whenever a tow truck is called, there must be a vehicle inventory performed to make a list of everything in the car before turning it over to the tow truck company. During the inventory search of the Lexus, officers opened the locked glove box with the ignition key and discovered the weapon and ammunition upon which the charges in this federal case are based.[8]

Deputy Wheeler discovered the weapon and handed it to Deputy Bradford, who, upon opening the weapon to unload it, found that the barrel of the weapon was still warm. In Deputy Wheeler's experience, a warm barrel meant that the weapon had been recently fired.[9]

---

[7] At the hearing, defense counsel pointed out that the police report completed by Deputy Wheeler did not contain all of the details that he testified to at the hearing, including the fact that the report did not note that the initial search of the Lexus was performed incident to Jackson's arrest. However, Deputy Wheeler testified that although he tries to provide as much detail as possible, the reports sometimes lack certain details. Nevertheless, he testified confidently that his testimony at the hearing was the best and most detailed recollection of what occurred at the TPS gas station on June 24, 2007 leading up to, and subsequent to, the arrest of Jackson and Lee.

[8] Deputy Wheeler testified that the contents of the glove box were not examined during the search incident to Jackson's arrest because it was locked.

[9] Law enforcement officers had recovered the weapon within approximately fifteen minutes of when the call from the Columbia County Dispatch had gone out to be on the look-out for the white Lexus.

At that point, Lee was also arrested, as both Lee and Jackson had denied the presence of a weapon in the car.

## II. DISCUSSION

According to Lee, his encounter with officers at the TPS gas station on June 24, 2007, violated the Fourth Amendment because the warrantless search of the Lexus was unreasonable, particularly in light of the fact that when asked, both Jackson and Lee denied officers permission to search the car. The government counters that based on the particularized information that Deputy Wheeler had at the time he encountered Jackson and Lee at the TPS, he was justified in conducting further investigation, and upon the discovery that Jackson's license had been suspended, officers were authorized to search the car incident to Jackson's arrest. As it was then necessary to turn the Lexus over to a towing company, standard procedure required an inventory of the contents of the car. The government therefore contends that the discovery of the weapon and ammunition during the course of this inventory search was entirely proper.[10] The government has the better argument.

**A.   Search of Lexus**

**1.   Reasonable Articulable Suspicion for Initial Investigation and Search Incident to Arrest**

Under Terry v. Ohio, 392 U.S. 1 (1968), the police may briefly stop and detain persons in order to investigate a reasonable suspicion that those persons are involved in criminal activity, even in the absence of probable cause to believe that a crime has been

---

[10]"Upon a motion to suppress evidence garnered through a *warrantless* search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution." United States v. Freire, 710 F.2d 1515, 1519 (11th Cir. 1983).

committed. United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990). Reasonable suspicion is determined from the totality of the circumstances, United States v. Sokolow, 490 U.S. 1, 8 (1989), and requires that the officer point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the investigative stop. Terry, 392 U.S. at 21; see also United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999). Although the "reasonable suspicion" required for a Terry stop is less stringent than the requirement for probable cause, United States v. Mikell, 102 F.3d 470, 475 (11th Cir. 1996), "reasonable suspicion" does require that an officer have more than a "hunch" that criminal conduct is afoot based on unparticularized facts. The officer must be able to articulate some minimal, objective justification for the investigatory detention. United States v. Acosta, 363 F.3d 1141, 1145 (11th Cir. 2004); United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989).

In this case, prior to approaching Lee, Jackson, and the female passenger at the TPS, Deputy Wheeler knew several facts that would satisfy the "reasonable suspicion" standard to justify a Terry investigation, including the make and color of the car (white Lexus), the type of distinctive chrome rims on the car, the state on the license plate (New Jersey), the number of male passengers (two), and the direction in which the car was driving. Indeed, Deputy Wheeler was able to arrive at the TPS prior to the arrival of the Lexus because he had sufficient information to determine where a vehicle heading from Lincoln County to Columbia County on Washington Road was likely to turn up. Given all of these facts, Deputy Wheeler had reasonable suspicion to investigate whether the persons in the white

Lexus were involved in the reported shooting incident in Lincoln County earlier in the evening.

Based on this reasonable suspicion, the Court concludes that Deputy Wheeler did nothing improper by approaching, and speaking with, Lee and Jackson, as well as the female passenger, at the TPS about the shooting incident in Lincoln County earlier that evening. Likewise, there was nothing improper about requesting, and running a check on, the license of the driver, Jackson. Once law enforcement officers discovered that Jackson's license was suspended, they had probable cause to arrest Jackson.

Once the officers had probable cause to arrest Jackson, they were authorized to search the Lexus incident to the arrest, regardless of any consent offered or withheld by Jackson or Lee. Thornton v. United States, 541 U.S. 615, 617, 623 (2004); New York v. Belton, 453 U.S. 454, 460 (1981); United States v. Robinson, 414 U.S. 218, 234-35 (1979). Thus, even though officers found no incriminating evidence during the initial search incident to arrest, there was nothing improper about the officers going into the Lexus without Jackson's or Lee's consent.

Having determined that Deputy Wheeler had reasonable articulable suspicion to investigate the possible involvement of the Lee and Jackson in the reported shooting incident in Lincoln County, and having determined that this investigatory stop ripened into an arrest of Jackson that authorized a search of the Lexus incident to the arrest, the Court next turns its attention to the inventory search that led to the discovery of the weapon and ammunition at issue in this case.

### 2. Inventory Search

Once officers have conducted a lawful arrest of the occupant-owner of a vehicle, they may also lawfully impound the car and conduct an inventory search. Arkansas v. Sullivan, 532 U.S. 769, 770 (2001) (*per curiam*); Colorado v. Bertine, 479 U.S. 367, 368-69 (1987) (upholding inventory search of van after driver's arrest for drunk driving).[11] Moreover, Georgia law permits officers to impound vehicles when, *inter alia*, the individual in charge of the vehicle is unable to provide for its custody, as well as in those instances in which the driver is arrested for an alleged offense. See O.C.G.A. § 40-6-206(c).

In this case, there is no question as to the valid arrest of Jackson, the driver and owner of the white Lexus. Nor is there any evidence to rebut Deputy Wheeler's credible testimony that after Jackson's arrest, the Lexus could not be released to Lee or the female passenger because they had been drinking. Thus, impounding the Lexus was a reasonable response to the situation. Moreover, Deputy Wheeler testified that it is standard procedure to perform an inventory of the contents of a vehicle before that vehicle is turned over to the tow truck company.

---

[11] The Supreme Court has provided the following rationales supporting the strong governmental interest in performing inventory searches of vehicles impounded by the police: "inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." Bertine, 479 U.S. at 372 (citing to South Dakota v. Opperman, 428 U.S. 364, 369 (1976)). As noted in Part I, *supra*, the Columbia County Sheriff's Office has a policy of making an inventory of all items in a car subject to impoundment prior to turning over such a car to a towing company. Having such a standard policy undoubtedly serves these three purposes noted by the Supreme Court.

Given that the Lexus was lawfully impounded, the Court also concludes that the subsequent inventory search of the vehicle that led to the discovery of the weapon and ammunition forming the basis of the charges against Lee was lawful. Thus, there is no basis for recommending suppression of the evidence discovered in the Lexus on June 24, 2007.

## B. Statements Made to Law Enforcement Officers

In his motion to suppress, Lee also challenges certain statements that he made to law enforcement officials. However, at the hearing, defense counsel clarified that he was not challenging whether he was advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966) or was pressured by law enforcement officers prior to making any statements. Rather, Lee disputes the manner in which his statements were preserved and whether the information in police reports about his statements is a complete and/or accurate memorialization of what he said. All sides agreed that this type of challenge to Lee's statements as reported by law enforcement are impeachment matters best left for consideration of the presiding District Judge in light of the evidence as it is presented at trial. Accordingly, the Court finds no basis for recommending suppression of any statements referenced in Lee's motion to suppress.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Lee's motion to suppress be **DENIED**. (Doc. no. 17).

SO REPORTED and RECOMMENDED this 5th day of October, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE